UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL T. WINIUS,

        Plaintiff,

  v.                                                 Case No. 19-C-936

KRISTEN L. PAWLAK,
LISA BUHS,
PAUL KEMPER,
ROBIN DIEBOLD,
CPT. THOMAS WIEGAN,
MARK HIESE,
JON E. LITSCHER, and
STEVEN JOHNSON,

        Defendants.

## SCREENING ORDER

On July 26, 2018, Plaintiff Michael T. Winius, who is currently serving a state prison sentence at Prairie Du Chien Correctional Institution (PDCI) and representing himself, filed a complaint in Dane County Circuit Court under 42 U.S.C. § 1983. Defendants removed the action to the U.S. District Court for the Western District of Wisconsin on February 27, 2019 and filed a motion to transfer the case to this court. After briefing on the motion, the Western District court granted Defendants' motion and transferred the case to this court on June 27, 2019. In the transfer order, the court noted that "the complaint has not yet been screened under 28 U.S.C. § 1915A." Dkt. No. 9 at 5. The $400 filing fee was paid upon removal to the Western District. *See* Dkt. No. 1, Docket Text. The court will now proceed to screen Winius' complaint, as required under § 1915A.

**SCREENING OF THE COMPLAINT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

**ALLEGATIONS OF THE COMPLAINT**

During all times relevant to this action, Winius was confined in Racine Correctional Institution (RCI) and each of the defendants was employed at RCI, with the exception of Mark Hiese and Jon Litscher, who worked for the Wisconsin Department of Corrections (DOC) in more general roles. In October 2017, the same month that Winius filed a lawsuit (17-CV-1455) against

2

Lisa Buhs and Kristen Pawlak in this court, Winius' fiancée, Spring Ristola, discovered that Pawlak, a social worker and co-facilitator of RCI's Beacon sex offender treatment program, was blogging about Winius and other Beacon participants. While Winius was not personally named in the blog posts, he alleges that Pawlak included sufficient information for him to be identified and disclosed his sensitive health and treatment information. Winius alleges that, in her blog, Pawlak referred to Winius and his peers as psychopaths, degenerates, con men, nasty sex offenders, and narcissists.

On October 31 and November 1, 2017, Winius and Ristola filed complaints about Pawlak's blogging and notified Buhs, an RCI psychologist and co-facilitator of the Beacon program, and RCI Warden Paul Kemper about the conduct. Winius alleges that Buhs and Pawlak knew about his intent to file 17-CV-1455 before its filing. He alleges that after he filed 17-CV-1455 and reported Pawlak's blogging activities, the defendants "engaged in an all-out retaliatory campaign against [him]." Dkt. No. 1-1 at 4. The complaint identifies numerous instances of retaliatory conduct beginning from prior to the filing of 17-CV-1455 and continuing for several months after its filing. These instances include:

> June 12, 2017: Winius applied to add Seanne Ristola and A.S.R., Spring Ristola's daughters, to his visitation list. Some months later (presumably after October 2017), Kemper and DOC Secretary Litscher denied the visitation request and ensuing appeals based on Pawlak's false statements.
>
> October 20, 2017: Pawlak completed DOC forms 745, 1423, and 3484, each of which was riddled with false information and errors, according to Winius. Winius alleges that Pawlak knew these forms would carry weight in the DOC's visitation and Program Review Committee (PRC) determinations, among other things.
>
> November 8, 2017: Buhs, Kemper, RCI Deputy Warden Steven Johnson, and Captain Thomas Wiegan ordered, and RCI Prison Rape Eliminate Act Coordinator Robin Diebold conducted, a 70-minute cell search of Winius' cell, leaving his cell "in total ruin."

3

November 9, 2017: Buhs authored an allegedly false conduct report with contributions from Pawlak, Kemper, Johnson, Diebold, and Wiegan, as well as other Beacon participants. The next day, on November 10, 2017, Winius was placed in the Restrictive Housing Unit (RHU) until December 1, 2017. Winius claims the advocate he was assigned for the conduct report hearing, whose family member was friends with Buhs and Pawlak, had a conflict of interest. Winius also claims that Diebold and Wiegan denied him access to legal materials for 17-CV-1455 while he was in RHU.

December 4, 2017: Upon release from RHU, Winius was placed in Green-West Unit, a behavioral modification unit, rather than in general population. Wiegan informed Winius that his conduct hearing had been postponed for 21 days and that a guilty plea would result in an 8-day confinement while not taking the plea could result in a year in RHU. Given the risk of year-long placement in RHU, Winius reluctantly entered a guilty plea despite believing himself innocent of Pawlak's claims.

December 5, 2017: Winius was transferred from Green-West Unit cell 111 to 114, which had an unsecured door that, on December 7, resulted in $62 dollars being stolen from his cell.

December 7, 2017: A PRC hearing was held to determine whether and where Winius would be transferred. Winius alleges that Wiegan, Johnson, Kemper, and Director of the Bureau of Offender Classification and Movement Hiese circumvented Wisconsin Administrative Code DOC Chapter 302 and decided to transfer him to PDCI to impede his pre-release initiatives, to prevent him from completing his "last program," and to move him further from his family.

December 8, 2017: Buhs denied Winius' request for a copy of a Beacon polygraph examination despite approving a past request for a polygraph transcript prior to the filing of 17-CV-1455. According to Winius, Buhs failed to use the proper DOC denial forms and provided an erroneous basis for denying the request. Winius received a copy of the transcript only after his transfer to PDCI. He also claims that, as part of his transfer to PDCI, his was deprived of some of his personal property and that RCI improperly packed and damaged some property.

*Id.* at ¶¶ 38, 40–41, 47, 55, 59–60, 62–69, 71–72, 75, 78, 80, 82–83, 85–86, 89–90, 92–94, 96, 99, 104–07, 112, 117, 124–25, 132–34, 143–44, 146–50. Winius alleges that he filed, and Litscher and Hiese denied, numerous inmate complaints and appeals about Pawlak's conduct and these retaliatory acts. Winius claims that, as a result of the defendants' actions, he has suffered

4

"increase[d] anxiety, depression, fear, paranoia, panic attacks, and other physiological symptomology (e.g. heart and asthma attack symptoms and increase in physical pain associated with mental health disorders; physical tremors; sleeplessness; self-inflicted injuries during periods of sleep due to manifestation of symptoms)." *Id.* at ¶ 157.

Based on these allegations, Winius raises claims under the First, Fourteenth, and Fifth Amendments to the U.S. Constitution. He also raises various state statutory and common law claims. For relief, Winius seeks monetary damages, a declaratory judgment stating that the defendants violated his rights, and injunctive relief preventing the defendants from engaging in similar conduct toward others.

## THE COURT'S ANALYSIS

The crux of Winius' complaint is that he was retaliated against for filing 17-CV-1455, reporting Pawlak's blogging activities, and filing inmate complaints about Pawlak's conduct and subsequent retaliatory actions. To Winius, not only is the conduct he complains of retaliatory toward his First Amendment activity, but much of the conduct runs afoul of numerous other federal and state laws. Winius includes thirty allegations in the "Claims for Relief" section, most of which raise separate legal theories under which he believes one or more defendants is liable. *Id.* at ¶¶ 158–187. Winius also lists other legal theories in the introduction to his complaint. *Id.* at 4. Although this court must "construe pro se complaints liberally," *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011), it "need not try to fish a gold coin from a bucket of mud" or "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *see also Twombly*, 550 U.S. at 555.

With these principles in mind, the court is satisfied that Winius states a First Amendment retaliation claim against all defendants. To state such a claim, a plaintiff must allege "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Winius' 17-CV-1455 lawsuit, which raises constitutional and state law claims against Pawlak, Buhs, and others, and his inmate grievances constitute protected activity under the First Amendment. *See Woodruff*, 542 U.S. at 551; *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006).

Winius also alleges that Pawlak authored DOC forms riddled with falsities and errors that Kemper and Litscher used to deny his visitation request; that Buhs, Kemper, Johnson, and Wiegan ordered, and Diebold conducted, a targeted, 70-minute search of Winius' cell; Buhs authored a false conduct report with contributions from Pawlak, Kemper, Johnson, Diebold, and Wiegan, which contributed to his multi-week placement in RHU and need to face a conduct report hearing carrying a potential penalty of year-long placement in RHU; Wiegan, Johnson, Kemper, and Hiese circumvented DOC Chapter 302 to transfer him to PDCI; Buhs denied his request for a polygraph transcript after 17-CV-1455 was filed; and Litscher and Hiese denied all his inmate complaints and appeals. He alleges that each of the defendants took these actions in retaliation for his engaging in protected activity, and from Winius' allegations of fear of retaliation, it can be inferred at this stage that these deprivations would deter him from engaging in future protected activity. At least as to this conduct, Winius may proceed on First Amendment retaliation claims. *See Jellis v. Hulick*, 422 F. App'x 548, 550 (7th Cir. 2011).

6

He may not, however, proceed on retaliation claims with respect to his placement in Green-West Unit, the alleged theft that occurred in his Green-West Unit cell 114, or the deprivation of and damage to his personal property, as he does not allege that any of the named defendants were personally involved in those deprivations. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Nor does the alleged denial of access to legal materials while Winius was in RHU state an access-to-courts claim absent allegations of prejudice. *See Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990). Indeed, the court is acutely aware of the absence of prejudice given that 17-CV-1455 is currently pending before it.

Winius' allegations regarding the denial of his request to add his fiancée's daughters to his visitation list state a separate Fourteenth Amendment due process claim against Pawlak, Kemper, and Litscher. Prisoners have a limited constitutional right to intimate association and permanent or arbitrary denials of inmate visits with individuals with whom the inmate has highly intimate relationships may violate the Constitution. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618–20 (1984) (recognizing "a broad range of human relationships that may make greater or lesser claims to constitutional protection"); *see also Easterling v. Thurmer*, 880 F.3d 319, 322 (7th Cir. 2018) (per curiam). Winius alleges that Pawlak made false statements about him knowing that those statements would affect visitation decisions. Based on Pawlak's false statements, and with retaliatory motive, Kemper and Litscher denied Winius' visitation request. Given that at this stage it can be inferred that Winius had the type of highly personal relationship with his fiancée's daughters that may receive constitutional protection, *see Roberts*, 468 U.S. at 618–20, and that these defendants' disregard of some the factors in *Turner v. Safley*, 482 U.S. 78 (1987), and *Overton v. Bazzetta*, 539 U.S. 126 (2003), may also be inferred, Winius may proceed on due process claims

7

against Pawlak, Kemper, and Litscher. *See Ruddock v. Mueller*, No. 18-CV-01072-MJR, 2018 WL 3641745, at *4 n.4 (S.D. Ill. Aug. 1, 2018) (allowing plaintiff to proceed due process claim at screening regarding denial of visitation with individuals described as "like family" and "standing in the place of his family").

He may not, however, proceed on claims under Wisconsin Statute § 995.50 or defamation common law. Winius alleges that Pawlak's blog posts "provided sufficient information to identify Beacon participants she elected to blog about, to include but not limited to, Winius and his specific group peers." Dkt. No. 1-1 at ¶ 22. He alleges that the posts revealed sensitive health and treatment information. But as Winius acknowledges, Pawlak "omitted specific names" in her blog. *Id.* Not only does Pawlak omit names of individual offenders, but she also does not identify her name, where or for whom she works, what treatment program she oversees, or when or where she encountered the offenders she speaks about. *See id.* at 43–47. Indeed, she writes broadly about sex offenders with few particulars. While Winius and other Beacon participants may be able to recognize their circumstances in Pawlak's posts, to suggest that any other person could make such a connection is conclusory and entirely speculative. Such conclusory allegations must be rejected. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Pawlak's blog posts therefore fail to provide a basis for an invasion of privacy claim. Nor are the posts capable of defamatory meaning such that a defamation claim may be stated. *See Starobin v. Northridge Lakes Dev. Co.*, 94 Wis. 2d 1, 10, 287 N.W.2d 747 (1980). Winius' related allegations of breach of confidentiality also fail absent specific allegations of the existence of a contractual or statutory right to confidentiality.

The court must similarly reject Winius' conclusory allegations that the defendants violated the Equal Protection Clause of the Fourteenth Amendment, the torts of negligence and intentional

8

infliction of emotional distress, and unspecified state and federal confidentiality and privacy laws. These claims are conclusory and lack the factual support necessary to meet the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure and clarified by the Supreme Court. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For the same reasons, Winius' allegation that the defendants failed to protect him from injury is not alone sufficient to state a claim.

Nor may Winius proceed on the bevy of other claims he seeks to raise. He may not proceed on a claim under the Health Insurance Portability and Accountability Act (HIPAA), as that statute provides no private right of action. *Carpenter v. Phillips*, 319 F. App'x 658, 659 (7th Cir. 2011). Nor may he proceed on claims under Wisconsin Statutes §§ 939.05, 939.31, 940.285, 940.29, 942.01, 943.30, 943.39, 946.12, or 947.013, as those are criminal statutes providing no basis for a civil action. Section 457.03, which involves the duties and powers of the State of Wisconsin's Marriage and Family Therapy, Professional Counseling, and Social Work Examining Board, also fails to provide a private right of action. Winius also may not proceed on a claim under § 895.05 for failure to sufficiently allege compliance with the pre-claim notice requirements and because, as previously noted, Pawlak's vague blog posts are not capable of defamatory meaning. *See, e.g.*, *DeBraska v. Quad Graphics, Inc.*, 2009 WI App 23, ¶ 14–16, 316 Wis. 2d 386, 763 N.W.2d 219.

In sum, Winius may proceed on First Amendment claims against all defendants and Fourteenth Amendment claims against Pawlak, Kemper, and Litscher. He may not proceed on any other claims.

**IT IS THEREFORE ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order

9

are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal

rights of the parties. Therefore, failure to provide a correct address could result in dismissal of the case for failure to prosecute.

Dated at Green Bay, Wisconsin this   23rd   day of July, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court